UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
NORTHERN DIVISION

| | |
|---|---|
| TEXT MY GOV, INC.; and IWORQ, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>UPAHEAD, LLC; DAKOTA PIERCE; and CAILEB LUNDAHL-WOLFORD,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER DENYING PLAINTIFFS' MOTION TO REOPEN DISCOVERY AND COMPEL REIMBURSEMENT AND PRODUCTION OF DOCUMENTS (DOC. NO. 90)**<br><br>Case No. 1:24-cv-00107<br><br>District Judge David Barlow<br><br>Magistrate Judge Daphne A. Oberg |

In this action, Text My Gov, Inc. and iWorq, Inc. claim UpAhead, LLC and Dakota Pierce (the UpAhead Defendants) solicited and obtained trade secrets, including pricing information, from Caleb Lundahl-Wolford (a former employee), for purposes of establishing a competing business.[1] Plaintiffs filed a motion seeking to (1) reopen discovery, (2) compel the UpAhead Defendants to reimburse Plaintiffs for the costs of a forensic examination of Mr. Pierce's phone, and (3) compel the UpAhead Defendants to produce attorney-client communications regarding liability and damages in this case (based on Plaintiffs' assertion that the UpAhead Defendants waived privilege).[2] Plaintiffs also request an award of costs incurred in bringing the motion.[3] The UpAhead

---

[1] (See Second Am. Compl. ¶¶ 56–65, Doc. No. 79.)

[2] (Pls.' Short Form Disc. Mot. to Compel (Mot.), Doc. No. 90.) Plaintiffs' requests for leave to file an overlength motion, exhibits, and a reply are granted. (See id. at 2–3; Pls.' Reply on Short Form Disc. Mot. to Compel (Reply) 1, Doc. No. 98.)

[3] (Mot. 2, Doc. No. 90.)

Defendants opposed the motion,[4] and the court held a hearing on September 26, 2025.[5] For the reasons stated at the hearing and explained below, Plaintiffs' motion is denied.

## BACKGROUND

Under the scheduling order, fact discovery closed on June 27, 2025.[6] Plaintiffs contend that "[n]ear the end of discovery and after most depositions," they learned the UpAhead Defendants had shared Plaintiffs' pricing information with others.[7] Plaintiffs assert these communications with third parties were responsive to Plaintiffs' first set of discovery requests, issued in October 2024, and should have been produced earlier.[8] In April 2025, Plaintiffs issued new discovery requests specifically requesting production of these communications and identification of the recipients.[9] According to Plaintiffs, while the UpAhead Defendants produced some responsive communications, the "late production" prompted Plaintiffs to also request a forensic inspection of Mr. Pierce's phone.[10]

---

[4] (Resp. to Pls.' Short Form Disc. Mot. to Compel (Resp.), Doc. No. 96.)

[5] (Min. Entry, Doc. No. 100.)

[6] (Am. Scheduling Order, Doc. No. 76.)

[7] (Mot. 1, Doc. No. 90.)

[8] (*Id.*; *see also* Ex. G to Mot., Pls.' First Set of Reqs. for Produc., Doc. No. 90-7.)

[9] (Mot. 1, Doc. No. 90; Ex. H to Mot., Pls.' Third Set of Reqs. for Produc., Doc. No. 90-8; Ex. I to Mot., Pls.' Third Set of Interrogs., Doc. No. 90-9.)

[10] (Mot. 1, Doc. No. 90.)

Mr. Pierce's phone was forensically inspected after fact discovery closed.[11] Plaintiffs assert this inspection "revealed Defendants withheld additional communications including one where pricing was shared and another waiving privileged communications."[12] The document regarding privileged communications is a text message from Mr. Pierce to his father, disclosing an email from the UpAhead Defendants' attorney containing legal advice regarding this litigation.[13] Plaintiffs contend these communications were responsive to discovery requests and were improperly withheld during discovery.[14] Plaintiffs filed the instant motion to reopen discovery for additional depositions, and they request reimbursement for the costs of the forensic inspection.[15] They also argue Mr. Pierce's disclosure of the attorney-client communication to his father resulted in a waiver of privilege for all attorney-client communications about liability and damages in this case, and they seek to compel production of all such communications.[16]

In response, the UpAhead Defendants claim Plaintiffs first requested production of communications sharing trade secrets with third parties in April 2025.[17] The UpAhead Defendants assert they adequately responded to those requests and

---

[11] (*Id.*)

[12] (*Id.*)

[13] (*See* Exs. E & F to Mot., Doc. No. 90-5 & 90-6.)

[14] (Mot. 1, Doc. No. 90.)

[15] (*Id.* at 1–2.)

[16] (*Id.* at 2.)

[17] (*See* Resp. 2, Doc. No. 96.)

complied with the forensic inspection, which revealed only one responsive communication had not been produced.[18] They argue the attorney-client email was not responsive to any discovery request, and any privilege waiver is limited to the email itself.[19] They contend there is no basis to reopen discovery, order reimbursement, or compel production of other attorney-client communications.[20]

## ANALYSIS

The court first addresses the parties' factual disputes, then addresses each of Plaintiffs' requests for relief.

1. <u>Plaintiffs have not shown the UpAhead Defendants improperly withheld communications in discovery.</u>

As an initial matter, Plaintiffs' umbrella assertion that the UpAhead Defendants "hid relevant communications in discovery"[21]—the basis for their motion—is not borne out by the record.

Plaintiffs first assert the UpAhead Defendants improperly withheld communications relating to sharing Plaintiffs' trade secrets with others until "[n]ear the end of fact discovery," prompting Plaintiffs to request a forensic inspection of Mr. Pierce's phone.[22] Plaintiffs contend Requests for Production (RFPs) 3 and 6 (issued in

---

[18] (*See id.* at 1–2.)

[19] (*Id.* at 2–3.)

[20] (*Id.* at 2.)

[21] (Mot. 1, Doc. No. 90.)

[22] (*Id.*)

October 2024) request such communications.[23]  But neither do.  RFP 3 requests documents and communications "relating to the development of *UpAhead's business* including but not limited to, pricing documents, client pitches, pitch decks, client proposals, sales and advertising strategies, and sales trainings."[24]  And RFP 6 requests "Mr. Pierce's phone records from November 1, 2023 to present," without identifying any specific categories.[25]  Neither request expressly seeks communications relating to sharing Plaintiffs' trade secrets with third parties.  It does not follow from the language of the requests that the UpAhead Defendants were required to produce such communications in response to these requests.

Plaintiffs first requested communications relating to sharing Plaintiffs' trade secrets with others on April 28, 2025, when they issued the third set of RFPs and interrogatories.[26]  Specifically, RFP 14 requested "documents and communications referencing or otherwise involving any of the Plaintiffs, including references to Plaintiffs' pricing, sales, market share, products, features, customers, potential customers, sales tactics or competition."[27]  And Interrogatory 16 asked the UpAhead Defendants to identify "every person who has or has had access to, or received a copy of, Plaintiffs' confidential or trade secret information or materials as described in the

---

[23] (*Id.*)

[24] (Ex. G to Mot., Pls.' First Set of Reqs. for Produc., RFP 3, Doc. No. 90-7 (emphasis added).)

[25] (*Id.*, RFP 6.)

[26] (*See* Exs. H & I to Mot., Doc. Nos. 90-8 & 90-9.)

[27] (Ex. H to Mot., Pls.' Third Set of Reqs. for Produc., RFP 14, Doc. No. 90-8.)

Complaint . . . ."[28]  Notably, Plaintiffs asked for a forensic inspection (RFP 13) in the same set of requests, on April 28.[29]  Where Plaintiffs first requested such communications in the same set of discovery requests as the forensic inspection, they have not shown the UpAhead Defendants' withholding of trade-secret-related communications necessitated the forensic inspection.

Plaintiffs also have not demonstrated the UpAhead Defendants' response to the April 28 requests was inadequate.  The UpAhead Defendants responded to the RFPs and produced documents responsive to RFP 14 on June 4.[30]  And they responded to the interrogatories on June 12, identifying three individuals who received trade secret information (in addition to Mr. Pierce).[31]  And while they initially objected to a forensic inspection, they ultimately made Mr. Pierce's phone available for inspection as requested.[32]

Plaintiffs assert the forensic inspection (which occurred after fact discovery closed) revealed two responsive communications which should have been produced earlier: (1) a communication "where the pricing was shared," and (2) Mr. Pierce's text

---

[28] (Ex. I to Mot., Pls.' Third Set of Interrogs., Interrog. 16, Doc. No. 90-9.)

[29] (Ex. H to Mot., Pls.' Third Set of Reqs. for Produc., RFP 13, Doc. No. 90-8.)

[30] (Ex. B to Mot., Defs.' Resps. to Pls.' Third Set of Reqs. for Produc., Doc. No. 90-2.)

[31] (Ex. C to Mot., Defs.' Suppl. Answer to Pls.' Third Set of Interrogs., Doc. No. 90-3.)

[32] (*See* Ex. B to Mot., Defs.' Resps. to Pls.' Third Set of Reqs. for Produc., Obj. to RFP 13, Doc. No. 90-2; Mot. 1, Doc. No. 90.)

message to his father revealing an email from his counsel.[33]  Neither document demonstrates the UpAhead Defendants' prior discovery responses were inadequate.

First, Mr. Pierce's text message to his father is not responsive to any proper discovery request in this case.  To the extent it is responsive to RFP 6, the request for all of Mr. Pierce's phone records is overbroad and unenforceable as written.[34]  In their reply, Plaintiffs argue their counsel requested production of text messages with Mr. Pierce's father in an April 21 conferral email with the UpAhead Defendants' counsel.[35]  But an email is not a discovery request.  Further, the conferral email from Plaintiffs' counsel specifically requested communications between Mr. Piece and his father "about pricing"[36]—and the communication at issue was not about pricing.

The second communication at issue, described as one "where the pricing was shared,"[37] was responsive to RFP 14.  But Plaintiffs provide no evidence the UpAhead Defendants intentionally withheld this communication.  There is no indication their failure to produce it was anything other than inadvertent.  The fact that a forensic

---

[33] (Mot. 1, Doc. No. 90.)

[34] At the hearing, Plaintiffs argued it was responsive to RFP 14, which requests any communication "referencing or otherwise involving any of the Plaintiffs."  (Ex. H to Mot, Pls.' Third Set of Reqs. for Produc., RFP 14, Doc. No. 90-8.)  But RFP 14 then lists specific categories: "Plaintiffs' pricing, sales, market share, products, features, customers, potential customers, sales tactics or competition."  (*Id.*)  The email from counsel transmitted in the text message does not address any of those categories—instead, it provides legal advice regarding the likelihood of prevailing on a motion to dismiss and potential damages.  (Ex. F to Mot., Doc. No. 90-6.)  This communication does not reasonably fall within the scope of RFP 14.

[35] (Reply 1, Doc. No. 98.)

[36] (Ex. J to Reply, Doc. No. 98-1 at 3.)

[37] (Mot. 1, Doc. No. 90.)

inspection of Mr. Pierce's phone revealed *a single* responsive communication which had not already been produced does not show inadequacy of the UpAhead Defendants' discovery responses. Indeed, that a forensic inspection uncovered only one new communication demonstrates the thoroughness of the UpAhead Defendants' prior search.

In sum, Plaintiffs have identified only one communication they requested, but was not produced, in discovery. This communication was responsive to the set of requests issued on April 28, 2025. Defendants responded to those requests and produced other responsive documents before discovery closed. The forensic inspection of Mr. Pierce's phone then revealed only this single additional responsive communication—and there is no evidence the UpAhead Defendants intentionally withheld it. Under these circumstances, Plaintiffs have not shown the UpAhead Defendants "hid relevant communications in discovery"[38] or that their discovery responses were otherwise inadequate.

2. Request to Reopen Discovery

Plaintiffs seek to reopen discovery to conduct additional depositions, based on the communications revealed in the forensic inspection. They argue the UpAhead Defendants' withholding of documents "denied Plaintiffs the opportunity to depose party and third-party witnesses"[39]—but their motion does not specify who they want to depose. At the hearing, Plaintiffs stated they wanted to reopen Mr. Pierce's deposition and might also depose third-party recipients of their trade secret information.

---

[38] (Mot. 1, Doc. No. 90.)

[39] (*Id.*)

Under Rule 16 of the Federal Rules of Civil Procedure, a scheduling order may be modified "for good cause."[40] Relevant factors for courts to consider in deciding whether good cause exists to reopen discovery include:

> 1) whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and 6) the likelihood that the discovery will lead to relevant evidence.[41]

Plaintiffs have not shown good cause to reopen discovery—either to reopen Mr. Pierce's deposition or to depose other witnesses. As noted above, Plaintiffs have only identified one responsive communication which was not produced before discovery closed: the communication about pricing revealed in the forensic inspection. But before discovery closed, the UpAhead Defendants identified three other recipients of trade secret information and produced related communications. At the hearing, Plaintiffs acknowledged they deposed only one of those individuals; they chose not to depose the other two. The need for depositions of the other two third-party recipients was foreseeable before discovery closed, and Plaintiffs were not diligent in pursuing them. Further, Plaintiffs deposed Mr. Pierce after these disclosures, meaning they had an opportunity to question him about this topic.

Under these circumstances, Plaintiffs had an adequate opportunity to investigate the sharing of their trade secrets with third parties during the fact discovery period. Plaintiffs do not explain the significance of the one additional communication revealed in

---

[40] Fed. R. Civ. P. 16(b)(4).

[41] *Smith v. United States*, 834 F.2d 166, 169 (10th Cir. 1987).

the forensic inspection, nor do they identify what relevant information they would pursue in depositions relating to this document. This single additional communication does not justify reopening discovery for additional depositions.

### 3. Request for Reimbursement of Forensic Inspection Costs

Plaintiffs ask the court to order the UpAhead Defendants to reimburse them for the costs of the forensic inspection of Mr. Pierce's phone ($16,596.07).[42] They assert reimbursement is warranted because the UpAhead Defendants withheld communications in discovery—which the forensic inspection revealed.[43]

Plaintiffs cite no legal authority supporting their reimbursement request. At the hearing, they relied on Rule 37(d) of the Federal Rules of Civil Procedure. But this provision is inapplicable; nothing in it permits retroactive cost-shifting under the circumstances presented. Specifically, Rule 37(d) provides for an award of fees if a party fails to attend its own deposition or, "after being properly served with interrogatories under Rule 33 or a request for inspection under Rule 34, fails to serve its answers, objections, or written response."[44] Plaintiffs have not identified any interrogatories or requests for inspection the UpAhead Defendants failed to serve responses to.

Plaintiffs requested this inspection pursuant to Rule 34 of the Federal Rules of Civil Procedure. Under this rule, a responding party "need only make requested

---

[42] (Mot. 1–2, Doc. No. 90.)

[43] (*Id.* at 1.)

[44] Fed. R. Civ. P. 37(d)(1)(A)(i)–(ii).

documents *available* for inspection and copying; it need not pay the copying costs."[45] The UpAhead Defendants complied with Plaintiffs' request for a forensic inspection by making Mr. Pierce's phone available for inspection and copying. Under Rule 34, Plaintiffs bear the costs of the inspection and copying. They have identified no basis to retroactively shift these costs to the UpAhead Defendants. As noted, Plaintiffs have not shown a prior withholding of documents necessitated the forensic inspection. And the fact that the forensic inspection revealed a single additional responsive document does not justify retroactively shifting the costs of the inspection to the UpAhead Defendants.

4. Subject-Matter Waiver of Attorney-Client Privilege

Plaintiffs next contend Mr. Pierce's disclosure of an attorney-client email, in a text message to his father, waived privilege for all attorney-client communications regarding liability and damages in this case.[46] Because the specific attorney-client email shared with Mr. Pierce's father is now in Plaintiffs' possession, and Plaintiffs seek to compel production of other, undisclosed attorney-client communications, Plaintiffs' argument implicates subject-matter waiver.

---

[45] *Hatfield v. Wyoming*, No. 07-CV-109, 2008 U.S. Dist. LEXIS 130626, at *15 (D. Wyo. May 8, 2008) (unpublished) (quoting *Cardenas v. Dorel Juv. Grp., Inc.*, 230 F.R.D. 611, 619 (D. Kan. 2005)); *see also* 7 Moore's Federal Practice—Civil § 34.14 (2025) ("A party producing documents will ordinarily not be put to the expense of making copies for the requesting party. Rule 34(b) merely requires that the responding party make documents available for inspection and copying.").

[46] (Mot. 2, Doc. No. 90.)

Plaintiffs rely on Rule 502 of the Federal Rules of Evidence, which governs subject-matter waiver of privilege resulting from disclosure "in a federal proceeding."[47] Under this rule,

> When the disclosure is made in a federal proceeding . . . and waives the attorney-client privilege . . . , the waiver extends to an undisclosed communication . . . only if: (1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness be considered together.[48]

The advisory committee's note to Rule 502(a) explains "subject matter waiver (of either privilege or work product) is reserved for those unusual situations in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary."[49] According to the advisory committee, "subject matter waiver is limited to situations in which a party *intentionally puts protected information into the litigation in a selective, misleading and unfair manner*."[50]

Plaintiffs have not shown Mr. Pierce's disclosure of an attorney email to his father resulted in a subject-matter waiver of privilege for other attorney-client communications. The disclosed email contained advice regarding the likelihood of prevailing on a motion to dismiss and an assessment of the potential damages in this case.[51] Although Mr. Pierce intentionally disclosed it to his father, there is no indication he intended to use it

---

[47] Fed. R. Evid. 502(a).

[48] *Id.*

[49] Fed. R. Evid. 502 advisory committee's note to subdivision (a).

[50] *Id.* (emphasis added).

[51] (Ex. F to Mot., Doc. No. 90-6.)

in this litigation—in other words, he did not "intentionally put protected information into the litigation."[52] And the disclosure does not result in a "selective and misleading presentation of evidence to the disadvantage of the adversary."[53] This is not a situation where a party has selectively waived privilege for favorable information while withholding potentially unfavorable information.

In other words, there is no basis to conclude the disclosed email "ought in fairness be considered together" with other, undisclosed attorney-client communications, as required for subject-matter waiver under Rule 502(a).[54] Accordingly, the UpAhead Defendants' privilege waiver does not extend beyond the specific email already in Plaintiffs' possession. Plaintiffs' request to compel production of other attorney-client communications is denied.[55]

5. Request for Costs in Bringing This Motion

Plaintiffs' request for an award of costs in bringing this motion is denied. Their motion cites no legal authority supporting this request, but at the hearing, Plaintiffs cited Rule 37(d). As explained above, this provision is inapplicable; it addresses failure to appear at a deposition or to serve responses to interrogatories or a request for

---

[52] Fed. R. Evid. 502 advisory committee's note to subdivision (a).

[53] *Id.*

[54] Fed. R. Evid. 502(a)(3).

[55] Plaintiffs' motion also requests a privilege log or *in camera* review of the UpAhead Defendants' attorney-client communications, presumably to determine whether such communications fall within the scope of the alleged subject-matter waiver. (*See* Mot. 2, Doc. No. 90.) Where there was no subject-matter waiver, these requests are denied.

inspection[56]—circumstances not present here.  Other provisions of Rule 37 permit an award of expenses to a party who prevails on a motion to compel,[57] but such award is not available where Plaintiffs' motion is denied.

## CONCLUSION

Plaintiffs' motion[58] to reopen discovery, to order reimbursement for a forensic examination, and to compel production of attorney-client communications is denied.

DATED this 7th day of October, 2025.

BY THE COURT:

*Daphne A. Oberg*
Daphne A. Oberg
United States Magistrate Judge

---

[56] Fed. R. Civ. P. 37(d)(1).

[57] *See* Fed. R. Civ. P. 37(a)(5)(A).

[58] (Doc. No. 90.)